Mr. Justice Richardson
delivered the opinion of the court.
The material question made in this case is, Can a Judge who has presided at the trial of a case, set aside the verdict of a jury, rendered after a full hearing, without any allegation of surprize or mistake, or any objection' made to the time or manner of the trial; but simplv because the verdict is alleged to be intrinsically against law or evidence ?
Cases have certainly occurred wherein verdicts taken by surprize, or inadvertence, have been set aside by the presiding Judge ; but I know of no instance, where, as in the one before us, the objection was to the merits of the .verdict, and not to the manner or time of the trial. It appears, both, from the constitution and legislative enactments too, that the right to grant new trials, is confined to this court alone. The 3d section of the 10th article of the constitution, declares, that “ at the conclusion of the circuits, the Judges shall meet and sit at, &c. for the purpose of hearing and determining all motions which may be made for new trials, ike. In this article of the constitution, we find the right of granting new trials expressly ^•confined to the Judges assembled ata court of conference. This right appears too, to be no more than a recognition of the former practice of the Judges, to meet on the adjournment day for the same purpose. ' This was the old practice. But admitting this article of the constitution to be of doubtful construction, yet the act of 1799, (2 Faust, 316,) supplementary to the act establishing the system of judicature, is explicit. After directing the Judges to meet in order to hear and determine motions for new *560 trials, it proceeds cht.13, &c. “ Nor shall any Judge who 'shall have,presided at the trial of any cause, &c. ever sit or vote at such meeting oí the said judges on the same cause or-any’matter ui thing whatsoever, which shall arise out of, or shall concern the said caixse.’’ I can scarcely conceive a prohibition broader or more comprehensive. And though it may be dteemed an over-cautious and even a jealous provision, yet for myself, I consider it wise and salutary, taking man as he is practically seen and known. Now, how entirely at variance with the true spirit of this salutary prohibitory rule, would ifbe, if the very judge, whoattheconference of all the judges, and under their ■control, is forbidden to vote, should yet have power, when alono, to grant a new trial, by setting aside- a verdict taken at a court where he presides. The whole spirit of the prohibition seems to rise up against the conclusion', that the presiding judge may, of his own sole authority, order a new trial in the one case, when in the other, he cannot even have a voice.
The motion is therefore granted upon the second ground taken in the brief; so that we need not consider separately, every ground set forth. There is however one, which, unless expressly determined, might be hereafter relied upon, and the court will therefore consider it now — That the ■borrower of money lent upon usury, may, in a civil suit, be a competent witness to prove the usury against the lender ; who sues upon their usurious contract, has been so long permitted, and is so plainly sanctioned by the act of 1777, (P. L. 387,) in cases in which the lender will not deny the usury upon oath, that little need be said upon it. As a general rule, (2 Bay 177,) it is too well established, to b'e now shaken.
But the sixth ground taken' in the brief, supposes that this note should be confined to cases wherein the lender is alive at the time of trial, and refuses tobe sworn.
The proviso in the act of 1777, which gives rise to this distinction, is in these words: u provided, that if the person, fee. against whom such evidence is offered, will deny *561 apon oath, &c; the truth of what such evidence, (the borrower) offers to ¿wear against him, then such witness, (thfe borrower) Shall hot be sworn.”
Here it is supposed, that as the lender may, by denying the usury, upoii his oath, prevent the borrower froth being sworn, he being dead, and unable to deny the tharge, the borrower shall not be allowed to prove the usury by his own oath, against representatives who cannot have the alternative given by the act td the lender himself, if alive. And certain it is, that injustice may be done by a hardened and unprincipled debtor in such a case. But oh the other hand, when the borrower 1st dead, his representative's must in turn lose fob often the only evidence of the usury practised upon him in secret, and the usurer then obtains his judgment^ without denyirig the usury upon oath. The tule laid down by the act, may have its evil consequences ; but it is a general rule, with but one specific exception.
The words of the act, are “that in all cases whatsoever, &c. the borrower, See. shall be, and is hereby declared, to foe a good and sufficient witness in law, See.7’
And then comes the single exception, i. e. where the lender will deny the usury upon his oath. To multiply these exceptions by construction, would be to fritter away the rule itself. And though the court is sensible, that occasionally, injustice may follow from it; yet confiding that, in all cases where the party charged1 with the usury is dead, that nothing less than a very convincing develope-luent of’the usurious transaction on the part of the lender„ will be received, as full proof of the charge, wfe must take the rule as enacted by the legislature, together with the Specific exception alone. . ,
In this case, though the court are of Opinion'that the order made, must be reversed, yet Os by the mistake made, the defendants have had ho opportunity of making a mo *562 tion for a new trial before this court, and as there would be evident merits in such a motion, a new trial is ordered.-
May £s? Sanford, for the motion.
Mayrant, Evans Taylor, contra.
Justices Colcock, Huger, and Gantt, concurred.